UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| COUNTY OF DELTA, <br>       Plaintiff, <br><br> vs <br><br> PURDUE PHARMA, L.P., ET AL., <br>       Defendants. | ) <br> ) <br> ) <br> ) CASE NO. 4:18-cv-00095 <br> ) <br> ) <br> ) |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION TO REMAND

Plaintiff COUNTY OF DELTA, TEXAS filed a cause of action in Texas state court against the opioid manufacturers, distributors, and doctors who caused its opioid addiction crisis. Despite knowing that at least three different Defendants were Texas residents, and without the consent of these Defendants, AMERISOURCEBERGEN CORPORATION, CARDINAL HEALTH, INC., and MCKESSON CORPORATION, the "Distributor Defendants," speciously removed Plaintiff's claim to federal court using arguments this Court has recently rejected in another opioid case. The Distributor Defendants acknowledge that this Court does not have diversity jurisdiction over Plaintiff's claims as pled and do not allege that the non-diverse defendants were fraudulently joined. Instead, they claim fraudulent misjoinder—a standard the 5th Circuit has not adopted. The Distributor Defendants ask this Court to create diversity jurisdiction here by severing the claims of two different groups of defendants. Plaintiff asks this Court to once again reject the Distributor Defendants' arguments[1] and would respectfully show the Court that this case should be summarily remanded.

---

[1] This Notice of Removal is identical in every meaningful way to the notice of removal filed in a sister case—*County of Hopkins v. Purdue Pharma, L.P., et al*. In response to the notice of removal filed in *County of Hopkins*, Plaintiff's counsel prepared a Motion to Remand. And on December 20, 2017, this Court granted Plaintiff's Motion to Remand, noting that "complete diversity [was] lacking and remand [was] proper." **Ex. A**, Memorandum Opinion

I.   **INTRODUCTION**

The United States is in the midst of an opioid epidemic caused by the fraudulent marketing, distribution, prescription, and sales of prescription opioids ("opioids") that has resulted in addiction, criminal activity, and loss of life. On December 19, 2017, Plaintiff COUNTY OF DELTA brought suit to recover damages based on the increased economic burden Delta County faces as a result of the Defendants' misconduct.

The Distributor Defendants have removed this case to federal court based on a specious argument that two groups of non-diverse defendants in this case—Don Martin O'Neal, M.D. "the Dealer Defendant"; and the manufacturers of the opioid drugs "the Manufacturer Defendants" — should be severed from Plaintiff's case against the Distributor Defendants to create federal jurisdiction. In the alternative, the Distributor Defendants argue that both Dr. O'Neal and all of the Manufacturer Defendants were improperly joined. Both Dr. O'Neal and a Manufacturer Defendant are Texas residents – the "Texas Defendants."[2]

Plaintiff Delta County respectfully requests that this Court determine *sua sponte* that it does not have subject matter jurisdiction and summarily remand this case back to state court. A review of Plaintiff's Petition, Doc. 1-3, as well as the Notice of Removal reveals that there is no federal jurisdiction in this matter because there is not complete diversity. A timely ruling upon Plaintiff's motion to remand is essential. If this motion is not ruled upon in very short order, the

---

and Order Granting Plaintiff's Motion to Remand, Dec. 20, 2017. Specifically, the Order noted, "one of the Manufacturer Defendants is a Texas citizen." That same Manufacturer Defendant (Purdue Pharma, L.P.) is also being sued in the *County of Delta,* and did not consent to removal.

[2] Manufacturer Defendant Purdue did not consent to removal and is a Texas resident. *See* **Ex. B** Endo Health Solutions, Inc. and Endo Pharmaceuticals Inc.'s Response to Plaintiffs' Motion to Remand in the Hopkins County case (On December 18, 2017 – after this case was removed and after the telephone conference with this Court on December 15 – Endo learned that one of the members up the chain of ownership of Purdue Pharma L.P. (one of the alleged 'Manufacturer Defendants') was potentially as resident of Texas, which was then confirmed on December 19. Accordingly, Endo no longer directly opposes remanded because the grounds for removal depended on the diversity of all 'Manufacturer Defendants' from Plaintiff.").

2

case will be automatically transferred to the Multidistrict Litigation Docket No. 2804 in the Northern District of Ohio, which is the Distributor Defendants goal. The national strategy for these pharmaceutical defendants is to slow the resolution of these cases and control their placement.[3] This case was properly filed in state court, and Delta County should not be unfairly swept up in the national litigation.

Furthermore, Distributer Defendants have not met their burden of proving that a Rule 21 severance is necessary, or even allowable because: (1) a severance to create diversity jurisdiction would contravene Federal Rule of Civil Procedure 82; and (2) Plaintiff will be prejudiced by any severance as it will be forced to pursue its lawsuit in two different courts, may face an "empty chair" argument with different defendants in different cases, and risks inconsistent or conflicting judgments.

Moreover, Distributor Defendants have failed to meet their heavy burden of establishing improper joinder because: (1) Plaintiff's petition adequately states claims against the Dealer Defendant for fraudulently over-prescribing opioids in a scheme made possible by the Manufacturing Defendants fraudulent marketing and over-supply of the drugs; (2) the Texas Defendants are indispensable parties to allow full and just adjudication of Plaintiff's claims where each group of Defendants will blame the other for the opioid epidemic in Delta County; and (3) Defendants cannot establish fraudulent joinder of the Texas Defendants because Plaintiff has plead facts that fully support a possibility of recovery and do not reflect an "egregious, totally unsupported or…purposeful attempt to defeat removal." *Smallwood v. Illinois Cent. R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004); *Wells Fargo Bank, N.A. v. Am. Gen. Life Ins.*, 670 F. Supp. 2d 555, 562-63 (N.D. Tex. 2009).

---

[3] In fact, the MDL Court issued a ruling that all ligation is stayed pending settlement negotiations.

II. **DEFENDANTS HAVE THE BURDEN TO ESTABLISH THAT REMOVAL JURISDICTION IS APPROPRIATE.**

It is axiomatic that federal courts have limited jurisdiction, having power only over those cases authorized by the United States Constitution and federal statutes. *See Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375 (1994); *Coury v. Prot*, 85 F.3d 244, 248 (5th Cir. 1996). The burden of establishing federal jurisdiction falls on the defendants seeking removal, and the removal statute is strictly construed against removal jurisdiction because "removal jurisdiction raises significant federalism concerns." *Willy v. Coastal Corp.*, 855 F.2d 1160, 1164 (5th Cir. 1988); *see also Gutierrez v. Flores*, 543 F.3d 248, 251 (5th Cir. 2008). Any doubt as to the right of removal is resolved in favor of remand. *See Acuna v. Brown & Root, Inc.*, 200 F.3d 335, 339 (5th Cir. 2000); *Cross v. Bankers Multiple Line Ins. Co.*, 810 F. Supp. 748, 750 (N.D. Tex. 1992); *see also Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108-09 (1941).

III. **THIS COURT LACKS SUBJECT MATTER JURISDICTION BECAUSE THERE IS NOT COMPLETE DIVERSITY.**

  A. **Plaintiff Would Be Prejudiced by the Dismissal of Defendants and Have Not Shown that the Texas Defendants Are Dispensable Parties under Rule 21.**

In their Notice of Removal, the Distributor Defendants ask this Court to artificially construct subject matter jurisdiction by severing the claims of the other defendants under Rule 21. "While Rule 21 is routinely employed in cases that *began* in federal court, the federal courts have frowned on using the Rule 21 severance vehicle to conjure removal jurisdiction that would otherwise be absent. "*In re Xarelto (Rivaroxaban) Prods. Liab. Litig.*, 2016 U.S. Dist LEXIS 110644, *20 (E.D. La. 2016) (emphasis added). In these situations, the Supreme Court has stated that Rule 21 should only be used sparingly and the court should "carefully consider whether the dismissal of a nondiverse party will prejudice any of the parties in the litigation." *Newman-Green, Inc. v. Alfonzo-Larrain,* 490 U.S. 826, 838 (1989). Moreover, Rule 21

severance of claims is also limited by Federal Rules Civil Procedure 82 which states: "These rules do not extend or limit the jurisdiction of the district courts." FED. R. CIV. P. 82; *Echols v. Omni Med. Group, Inc.*, 751 F. Supp 2d 121, 1215 (N.D. Ok. 2010).

In *Xarelto*, the presiding MDL judge refused to sever the medical malpractice claims against the local defendants from the products liability claim against the national drug manufacturer. *In re Xarelto*, 2016 U.S. Dist. LEXIS at *21. Citing *Newman-Green*, the *Xarelto* court found that creating diversity jurisdiction through a Rule 21 severance would prejudice the plaintiffs because the plaintiffs had a "strong strategic interest" in playing the defendants against each other and severance would force the plaintiffs to face an empty chair at the state court proceedings. *Id*.

In this case, Plaintiff's argument against severance is even more compelling. The presence of the physicians and of the drug manufacturers is necessary for a just adjudication because complete relief may not be possible in their absence. FED. R. CIV. P. 19(a). Dr. O'Neal relied on the fraudulent marketing and increased supply of opioids produced by the drug manufacturers to enrich themselves at the expense of patients and of the public interest. Allegations against the Distributor Defendants are intertwined with both because they profited from distributing these drugs into communities and knowingly failed to report or halt the increase in opioid distribution and/or sale. Doc. 1-3 at ¶ 210. Indeed, all Defendants shared the self-interest and motivation to manufacture, distribute, and prescribe the same medications to increase their own profits, and the Plaintiffs have alleged that Manufacturing Defendants engaged in a financial scheme with the Distributor Defendants and Dealer Defendants. Doc. 1-3 at ¶¶ 126-131, 211. The distributors had the perspective to see what was happening, as opioid prescriptions skyrocketed and the distributors shuffled increasing supplies of opioid from the

manufacturers to fill prescriptions the "pill mill" doctors wrote. Their own financial gain came at the expense of the County's coffers. *See*, *e.g.*, Doc. 1-3 at ¶¶ 212.

Thus, the bad acts by *all* Defendants created and fed the opioid crisis in this country and in Delta County in particular, and caused Plaintiff to incur substantial economic expense in health care costs, additional police costs, and other consequences of the public health crisis engendered by Defendants. While Defendants may deny Plaintiff's claims in some future pleading, the dispositive point here is that Plaintiff expressly alleges this cause and effect relationship between the non-resident Defendants and the Texas Defendants in its Original Petition. *See Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 264 (5th Cir.1995) (whether removal was proper must be determined based on allegations in the complaint as it existed at the time of removal). The claims against the Distributor Defendants could not be fully and justly adjudicated if *either* the Dealer Defendants *or* the Manufacturers are missing, and the cases against the Dealer Defendants and the Manufacturing Defendants cannot be fully and fairly heard without the presence of the Distributor Defendants.

The cases upon which Defendants rely do not change this analysis. Those cases contrast claims against manufacturers for defective products with *medical malpractice claims* against health care providers. For example, in *Joseph v. Baxter International, Inc*, the district court found that doctors who prescribed Heparin despite a note in the patient's chart noting her allergy to the drug were not indispensable parties in a case against the same drug manufacturer for its conduct in designing, manufacturing, labeling, and recalling tainted Heparin. 614 F.Supp.2d 868, 872 (N.D. Ohio 2009) The claim against the doctors would be viable even if Heparin held no risks to those patients without an allergy, and the allegations of medical malpractice were truly distinct from the products liability claims. *See*, *e.g.*, *Sullivan v. Calvert Mem. Hosp.*, 117 F.

Supp. 3d 702, 707 (D. Md. 2015) (finding that doctors, against whom the plaintiff alleged medical malpractice in selecting and implanting a medical device, were dispensable parties in a products liability suit alleging improper design, manufacture, testing, and marketing of the device); *Kelly v. Aultman Physician Ctr.*, No. 5:13CV0994, 2013 WL 2358583, at *3 (N.D. Ohio May 29, 2013); *DeGidio v. Centocor, Inc.*, No. 3:09CV721, 2009 WL 1867676, at *3-4 (N.D. Ohio Jul. 8, 2009); *Lucas v. Springhill Hosps., Inc.*, No. 1:09HC60016, 2009 WL 1652155, at *2 (N.D. Ohio Jun. 11, 2009).

Plaintiff's claims against the Texas Defendants do not rest on allegations of medical negligence. Rather, the claims against *all* Defendants, including the Texas Defendants, involve public nuisance, fraud, and misrepresentation in marketing, distributing, selling and prescribing opioids. *See generally* Doc 1-3. Moreover, if Distributor Defendants are not present in the state action, the Manufacturer Defendants, will be able to point the finger at those Distributor Defendants as the responsible parties for creating the opioid epidemic. These empty chairs will prejudice Plaintiff in receiving a full and fair adjudication. The Texas Defendants are therefore indispensable parties and cannot be severed to create complete diversity.

### B.    Defendants Have Not Met the Heavy Burden of Demonstrating that the Texas Defendants Are Improperly Joined.

The burden of proving improper joinder is a "heavy one." *Griggs v. State Farm Lloyds*, 181 F.3d 694, 699 (5th Cir. 1999). A claim of fraudulent joinder must be stated with particularity, supported by clear and convincing evidence, and proven with "certainty." *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97 (1921). If there is *any* doubt as to whether a plaintiff states a claim against the non-diverse defendant, the joinder is not fraudulent. *See Parks v. New York Times Co.*, 308 F.2d 474 (5th Cir. 1962).

7

There are two ways to establish improper joinder: "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Travis v. Irby*, 326 F.3d 644, 647 (5th Cir. 2003). Here, Defendants do not dispute that two Defendants in this case, Dr. O'Neal and Purdue, are Texas citizens, just like Plaintiff. Therefore, since there is no allegation that Plaintiff's jurisdictional facts were fraudulently pled, the second test for improper joinder is the only one at issue. *See id.* at 647.

The Fifth Circuit held that "the test for fraudulent joinder is whether the defendant has demonstrated that there is **no possibility of recovery** by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." *Smallwood v. Illinois Cent. R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004) (emphasis added). To determine whether there is any reasonable possibility of recovery against the in-state defendants, district courts may conduct a Rule 12(b)(6)-type analysis to determine whether the complaint states a claim against the in-state defendants under state law. *See id.*; *see also Travis*, 326 F.3d at 648 (noting that the test for improper joinder is adopted from the Rule 12(b)(6) standard). "**Ordinarily, if a plaintiff can survive a Rule 12(b)(6) challenge, there is no improper joinder**." *Smallwood*, 385 F.3d at 573 (emphasis added); *see also Bopp v. Westchester Surplus Lines Ins. Co.*, No. 09-6448, 2009 WL 3763921 (E.D. La. Nov. 9, 2009) (holding that the defendant failed to show improper joinder when the allegations in the plaintiff's complaint were sufficient to state a claim for relief against the non-diverse defendant).

Here, the detailed allegations in Plaintiff's complaint would easily defeat a Rule 12(b)(6) motion to dismiss, and are therefore sufficient to show that the Texas Defendants are properly

joined in this case. In fact, Defendants do not allege that the Plaintiff fails to state a claim against the Texas Defendants, a virtual concession that defeats a finding of fraudulent joinder.

Defendants ignore the standard applied to claims of fraudulent joinder in the Fifth Circuit and their citation of district court rulings apparently applying different standards cannot help the Court make the necessary determination in this case. Under the standard expressly established by the Fifth Circuit, the Texas Defendants are not fraudulently joined in this case because Plaintiff has stated viable claims against them.

Defendants note, as some district courts have, that the Fifth Circuit has cited *Tapscott v. MS Dealer Serv. Corp.,* 77 F.3d 1353, 1360 (11th Cir. 1996). While this is true, the court did not cite *Tapscott* as the standard for fraudulent misjoinder and **did not adopt the standard**. Rather, the court cited *Tapscott* in noting that joinder might be improper even when it was *not* fraudulent. *Crockett v. R.J. Reynolds Tobacco Co.*, 436 F.3d 529, 533 and n.5 (5th Cir. 2006). The court did not change the standard for fraudulent misjoinder, although some Texas district courts have addressed fraudulent joinder claims under the *Tapscott* or modified standards.

Even under the *Tapscott* standard, however, the Texas Defendants are not fraudulently joined. To justify a finding of fraudulent joinder under *Tapscott* "[t]he joined parties and claims must be without a palpable connection, causing the joinder to be egregious, totally unsupported or a purposeful attempt to defeat removal." *Wells Fargo*, 670 F. Supp. 2d 562-63 (N.D. Tex. 2009). Again, as shown above, Plaintiff has alleged that the Dealer Defendant fraudulently over-prescribing opioids in a scheme made possible by the Manufacturing Defendants fraudulent marketing and over-supply of the drugs. The claims are both factually and legally intertwined with the claims against the Distributor Defendants.

Under any potentially relevant standard, then, the Texas Defendants are not fraudulently joined. The claims against them are viable and fully supported, and the claims against them are not made for the purpose of defeating removal. These Texas Defendants are indispensable parties to a full and just adjudication of Plaintiff's claims, and the case should be remanded to state court for their full participation in the case.

## IV. CONCLUSION

Remand is required because there is not complete diversity among all parties, depriving this Court of subject matter jurisdiction in this case because there is not complete diversity among the parties. Plaintiff Delta County, as well as the over-prescribing physician and Purdue, are Texas citizens. Plaintiff therefore requests that this case be summarily remanded to state court.

Dated:  February 14, 2018

Respectfully submitted,

**SIMON GREENSTONE PANATIER BARTLETT, P.C.**

/s/Jeffrey B. Simon
Jeffrey B. Simon
TX State Bar No. 00788420
Amy M. Carter
TX State Bar No. 24004580
Heather V. Davis
TX State Bar No. 24092324
3232 McKinney Avenue, Suite 610
Dallas, Texas 75204
214-276-7680
214-276-7699 fax
jsimon@sgpblaw.com
acarter@sgpblaw.com
hdavis@sgpblaw.com

**MARTIN WALKER, P.C.**
Jack Walker
TX State Bar No. 00785167
Reid Martin
TX State Bar No. 13098986
121 N. Spring Avenue
Tyler, Texas 75702
Tel: 903-526-1600
Fax: 903-595-0796
rmartin@martinwalkerlaw.com
jwalker@martinwalkerlaw.com

**SANDERS, O'HANLON & MOTLEY**
Roger D. Sanders
TX State Bar No. 17604700
111 S. Travis St.
Sherman, Texas 75090
Tel: 903-892-9133